UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MARGO LEONFORTE, | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:25-cv-00441-SDN |
| REGIONAL SCHOOL UNIT 19, et al., | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Plaintiff Margo Leonforte brought this action against her former employers, Regional School Unit 19 ("RSU 19"), Michael Hammer, and Mary Nadeau, asserting Defendants pressured her into resigning from her job as a public school teacher in violation of various constitutional provisions. ECF No. 21. Defendants moved to dismiss, arguing Ms. Leonforte fails to state claims upon which relief could be granted. ECF Nos. 27 & 29. After full consideration of the parties' submissions, and for the following reasons, the Court agrees with Defendants and **GRANTS** their motions to dismiss.

**BACKGROUND**[1]

The relevant background is as follows. RSU 19 and Nokomis Regional High School ("the School") employed Ms. Leonforte as a public school teacher at all times relevant to this complaint. *First Amended Complaint*, ECF No. 21 ("FAC") ¶ 10. Sometime in 2024, the School placed Ms. Leonforte on a teacher improvement plan, which she successfully

[1] In evaluating a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations in the first amended complaint, ECF No. 21, and draws all reasonable inferences in the Plaintiff's favor. *See Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 10–11 (1st Cir. 2011).

completed. *Id.* In March 2025, Ms. Mary Nadeau, the School's principal, issued a positive performance review to Ms. Leonforte. *Id.*

On April 11, 2025, Ms. Leonforte's son engaged in an altercation with another student.[2] *Id.* ¶ 11. Later that day, Ms. Nadeau sent a "written communication" to Ms. Leonforte "explicitly t[ying] the incident [with Ms. Leonforte's son] to Plaintiff's continued employment with the district." *Id.* ¶ 12. On April 14, 2025, RSU 19 Superintendent Michael Hammer and other unnamed people called Ms. Leonforte into a meeting, wherein Ms. Leonforte reported that the other student in the altercation "had a known history and reputation among students for sexually abusive and predatory behavior," which "formed the basis for [Plaintiff's] mandated report of sexual misconduct."[3] *Id.* ¶¶ 14–15.

On April 16, 2025, Mr. Hammer and other unnamed people convened another administrative meeting to discuss Plaintiff's employment with the district. *Id.* ¶ 17. There, Mr. Hammer communicated that "he had already secured support from multiple school board members for the District's intended outcome" and that "pursuing a school board hearing in an effort to preserve [Plaintiff's] employment would be 'dangerous for everyone.'" *Id.* Ms. Leonforte alleges these statements "were used to exert pressure on Plaintiff to resign" and that her subsequent resignation from employment was "not voluntary." *Id.* ¶ 18. As a "direct result" of these events, Plaintiff alleges she suffered

[2] Ms. Leonforte's son is the plaintiff in another action suing the same Defendants. *See Leonforte v. Reg'l Sch. Unit 19, et al.*, Dkt. No. 26-cv-226 (D. Me. Apr. 21, 2026).

[3] It is unclear from the FAC whether Ms. Leonforte initially reported this misconduct before the April 14 meeting or during it. Regardless, the Court's analysis is unchanged.

"severe anxiety and emotional distress that substantially limited major life activities" and experienced ongoing difficulty securing new employment. *Id.* ¶¶ 19–20.

As a result of her allegedly involuntary resignation, Ms. Leonforte brings four counts against all Defendants. Count I asserts a First Amendment retaliation claim under 42 U.S.C. § 1983. Count II asserts a procedural due process claim under § 1983. Count III appears to reassert the First Amendment retaliation claim. Count IV brings an equal protection claim under the Fourteenth Amendment. Ms. Leonforte seeks compensatory damages, punitive damages, and an order from this Court directing Defendants to clarify that her separation was involuntary and the result of allegedly unlawful conduct. The Court now addresses each count in turn.

**STANDARD OF REVIEW**

When considering a motion to dismiss, the Court accepts all well-pleaded facts alleged in the first amended complaint as true, disregarding legal labels and conclusions, and resolving reasonable inferences in the Plaintiff's favor. *See Galvin v. U.S. Bank, N.A.*, 852 F.3d 146, 155 (1st Cir. 2017). To avoid dismissal, the complaint must allege sufficient facts to support a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To satisfy the "plausibility standard," the factual allegations in the complaint, along with reasonable inferences drawn from those allegations, must show more than a mere possibility of liability—that is, "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Lyman v. Baker*, 954 F.3d 351, 359–60 (1st Cir. 2020) ("For the purposes of our 12(b)(6) review, we isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." (quotation modified)).

Because Ms. Leonforte is pro se, the Court construes her complaint liberally. *See Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 75 (1st Cir. 2014). "However, pro se status does not insulate a party from complying with procedural and substantive law." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997). Like other plaintiffs, "even a pro se plaintiff is required 'to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Adams v. Stephenson*, 116 F.3d 464 (1st Cir. 1997) (unpublished table decision) (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988)). Holding all plaintiffs, including pro se plaintiffs, to this standard is necessary to ensure every defendant is "afforded both adequate notice of any claims asserted against him and a meaningful opportunity to mount a defense." *Díaz-Rivera v. Rivera-Rodríguez*, 377 F.3d 119, 123 (1st Cir. 2004) (quotation modified).

## ANALYSIS

### I. Ms. Nadeau's Motion to Dismiss

Ms. Nadeau moves to dismiss all claims against her, arguing Ms. Leonforte fails to attribute any adverse actions to Ms. Nadeau. ECF No. 27. Plaintiff rejoins that Ms. Nadeau engaged in adverse action when she "explicitly linked the student incident to Plaintiff's continued employment, and participated in administrative actions that dismissed Plaintiff's mandated report of serious misconduct." ECF No. 32 at 1.

Section 1983 imposes liability on any person who, acting under color of state law "subjects, or causes to be subjected," any person within the United States to the deprivation of rights, privileges, or immunities secured by the Constitution and federal law. 42 U.S.C. § 1983. A plaintiff seeking redress for a deprivation of federal constitutional rights by a state actor must accordingly proceed under that statute. A plaintiff's personal-

capacity claim under § 1983 must rest on the defendant's own acts or omissions. *See Justiniano v. Walker*, 986 F.3d 11, 20 (1st Cir. 2021). The FAC attributes only limited conduct to Ms. Nadeau. It alleges that she, along with unspecified others, "escalated the matter [against Ms. Leonforte] beyond established policy, tied Plaintiff's employment directly to the incident, and initiated actions that signaled predetermined outcomes."[4] FAC ¶ 2. The FAC further alleges that Ms. Nadeau gave Ms. Leonforte a positive performance review, praised her effectiveness with difficult students, and discussed possible future opportunities in the district. *Id.* ¶ 10.

Construed liberally, the FAC may permit an inference that Ms. Nadeau attended the meetings held on April 14 and April 16. The pleading, however, does not name her in connection with those meetings—it instead refers only generally to "Defendants." *See id.* ¶¶ 14–16, 18. That collective pleading is insufficient to establish Ms. Nadeau's individual involvement. *See Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 16 (1st Cir. 2011) ("After all, we must determine whether, as to each defendant, a plaintiff's pleadings are sufficient to state a claim on which relief can be granted." (quotation modified)).

More fundamentally, the FAC does not allege Ms. Nadeau participated in any administrative decision concerning Ms. Leonforte, exercised authority over her employment, or took any concrete action affecting her employment status. Beyond the allegation that Ms. Nadeau "tied" Ms. Leonforte's employment to the students' altercation, the FAC identifies no particular conduct by Ms. Nadeau that caused a

[4] At the motion to dismiss stage, the Court may not consider factual assertions contained only in Ms. Leonforte's opposition. The analysis is limited to the facts alleged in the FAC, which the Court must accept as true for purposes of Rule 12(b)(6). *See Rivera v. Rhode Island*, 402 F.3d 27, 31 (1st Cir. 2005) ("We look only to the allegations in the complaint and take them as true, as required in a Rule 12(b)(6) motion.").

deprivation of a federally protected right. The FAC therefore does not state a plausible § 1983 claim against Ms. Nadeau; it does not identify the constitutional or federal right that Ms. Nadeau allegedly violated, much less allege facts permitting a reasonable inference that her own conduct caused such a violation.

Rule 8 does not require "detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A complaint that leaves the Court to speculate about both the alleged right and the defendant's conduct does not satisfy that standard. Accordingly, the Court **GRANTS** Ms. Nadeau's motion to dismiss. ECF No. 27.

## II. Regional School Unit 19 & Mr. Hammer's Motion to Dismiss

RSU 19 and Mr. Hammer move to dismiss all counts against them for failure to state a plausible claim, *see* ECF No. 29, which Ms. Leonforte opposes, *see* ECF No. 33.

### A. First Amendment Retaliation Claim (Counts I & III)

The First Amendment guarantees the right to speak on matters of public concern. *See* U.S. Const. amend. I. That right is not lost when an individual chooses to work for the government, *see Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007), but a public employee does not speak as a citizen when she speaks pursuant to her ordinary job duties, *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Courts therefore begin by "determining whether the employee spoke as a citizen on a matter of public concern." *Id.* at 418. If she did not, the inquiry ends: "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *MacRae v. Mattos*, 106 F.4th 122, 133 (1st Cir. 2024), *cert. denied*, 145 S. Ct. 2617 (2025) (quoting *Garcetti*, 547 U.S. at 418).

Ms. Leonforte's claim rises and falls with this first step. The FAC does not plausibly allege that Ms. Leonforte made the report at issue as a private citizen. It asserts instead

that Ms. Leonforte acted "as a mandated reporter" when she informed Defendants that one of the students in the altercation had engaged in sexual harassment. FAC ¶ 24. Maine requires teachers to report suspected child abuse or neglect when acting in a professional capacity. *See* 22 M.R.S. § 4011-A(1)(A). By alleging that she made the report because her professional role required it, the FAC places her speech entirely within the scope of her employment rather than outside it. Ms. Leonforte responds that she "spoke not only as a school employee but also as a parent advocating on behalf of her child." ECF No. 33 at 5. But she can point to no part of the FAC, nor can the Court discern one, that her speech was predicated on anything other than being a mandated reporter. *See* FAC ¶ 15 ("Plaintiff reported that the other student had a known history and reputation among students for sexually abusive and predatory behavior, information that had been disclosed to Plaintiff and *formed the basis for her mandated report of sexual misconduct*." (emphasis added)).

Even if the FAC plausibly alleged that Ms. Leonforte spoke as a parent-citizen, the claim would independently fail because it does not plausibly allege an adverse employment action. A First Amendment retaliation claim requires protected speech, an adverse employment action, and a causal connection between the two. *See Garayalde-Rijos v. Mun. of Carolina*, 747 F.3d 15, 24 (1st Cir. 2014).

Ms. Leonforte alleges that Defendants forced her to resign. Because she does not allege an actual discharge, her adverse-action theory rests on a constructive discharge. Constructive discharge requires conditions "so intolerable that they rendered a seemingly voluntary resignation a termination." *Torrech-Hernández v. Gen. Elec. Co.*, 519 F.3d 41, 50 (1st Cir. 2008). The test is not whether conditions "were difficult or unpleasant"; the employee must show the employer deprived her of a meaningful opportunity to make a free choice about continuing the employment relationship. *Id.* (quoting *Exum v. U.S.*

*Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004)). Constructive discharge exists where the employer's conduct effectively strips the employee of a genuine choice to remain employed. *Vega v. Kodak Caribbean, Ltd.*, 3 F.3d 476, 480 (1st Cir. 1993).

Ms. Leonforte fails to make this necessary showing. The crux of her complaint is that Defendants expected to terminate Ms. Leonforte and advised that pursuing additional review of that decision would be futile. But that alone is not sufficient to state a claim because "an employee's subjective interpretation that continued employment would be uncomfortable and demeaning and would lead to demotion or termination in the future does not constitute constructive discharge." *Torrech-Hernández*, 519 F.3d at 51 (quotation modified). The FAC also alleges Mr. Hammer told Ms. Leonforte a hypothetical school board meeting to challenge a termination decision would be "dangerous for everyone." FAC ¶ 17. Read in context, however, the FAC still alleges no coercive act, material change in working conditions, or other circumstances making Ms. Leonforte's resignation involuntary.

Rather, the FAC indicates Ms. Leonforte could have pursued administrative review of the decision, whether or not Defendants had already made a final decision. It alleges no facts showing Defendants deliberately created intolerable working conditions or otherwise deprived her of a meaningful choice between continued employment and resignation. See *Torrech-Hernández*, 519 F.3d at 50–51. The allegations concerning school board meetings and Defendants' purported departure from established policy do not fill that gap.[5] Because the FAC fails to plausibly allege constructive discharge or

[5] The FAC's assertions of "escalating the matter beyond established policy" and "subjecting Plaintiff to coercive administrative meetings," FAC ¶ 25, do not rise to the level of adverse action. *See Morales-Vallellanes v. Potter*, 605 F.3d 27, 36 (1st Cir. 2010) ("Examples of adverse employment actions in the retaliation context include termination of employment, a demotion

another adverse employment action, it independently fails to state a First Amendment retaliation claim.

Count III requires brief separate treatment**.** RSU 19 and Mr. Hammer construe Count III as a Title IX retaliation claim. ECF No. 29 at 5. Ms. Leonforte disagrees and says Count III asserts retaliation for reporting misconduct and opposing unlawful practices in violation of the First and Fourteenth Amendments, not a standalone Title IX claim. ECF No. 33 at 7–8. The Court accepts Ms. Leonforte's characterization of her own claim and construes Count III as another First Amendment retaliation claim. It, however, fails for the same reasons as Count I.

Accordingly, the Court **GRANTS** RSU 19 and Mr. Hammer's motion to dismiss Counts I and III.

### B. Fourteenth Amendment Procedural Due Process Claim (Count II)

Count II of the FAC avers that Plaintiff possessed a constitutionally protected property interest in her employment as a public school teacher and that she was deprived of that interest without notice and due process in violation of the Fourteenth Amendment. FAC at 9–10. The FAC points specifically to Defendants' "warning that pursuing formal process would be 'dangerous for everyone'" and argues this warning forced her resignation. *Id.* ¶ 33. RSU 19 and Mr. Hammer respond that Ms. Leonforte's resignation was neither a constructive discharge nor coerced and therefore cannot support a due process claim. *See* ECF No. 29 at 4–5.

---

evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." (quotation modified)). In fact, the FAC appears to indicate Defendants' attempts to impose administrative order to their interactions with Ms. Leonforte.

The Due Process Clause of the Fourteenth Amendment bars a state from depriving a person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Protected property interests arise not from the Constitution itself, but from independent sources such as state law. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). A Plaintiff whose due process claim is premised on the termination of her employment must show a legally recognized expectation of retaining her position. *Santana v. Calderón*, 342 F.3d 18, 24 (1st Cir. 2003). Generally, due process is satisfied if the Plaintiff receives notice and a meaningful opportunity to be heard. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

A public employee who voluntarily resigns cannot establish that the defendant deprived her of a property interest within the meaning of the Due Process Clause. *See Monahan v. Romney*, 625 F.3d 42, 47 (1st Cir. 2010). In *Monahan*, the First Circuit affirmed judgment for the defendants because the plaintiff had a genuine choice between resignation and termination, understood he was not obligated to resign, and could have requested more time or pressed his objections before deciding, even though he likely felt pressure to decide quickly. *Id.* The same is true here: the FAC's own allegations show Ms. Leonforte knew she had the power to challenge her potential termination at a public school board hearing—a fact her superiors, including Mr. Hammer, explicitly conveyed to her—and that she had a choice between resignation and termination. Additionally, as explained above, the warning that a school board hearing would be "dangerous," does not transform her decision into constructive discharge or coercion.

A state does not violate due process requirements where it makes procedural protections available, but the plaintiff simply declines to use them. *Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir. 1982). Here, the FAC shows that Defendants gave Plaintiff two

meetings—on April 14 and April 16—and told her she could pursue a full evidentiary hearing before the school board to contest any termination. FAC ¶¶ 14–17. A pretermination hearing need not be elaborate, and something less than a full evidentiary hearing satisfies due process. *See Burns v. City of Worcester*, 772 F. Supp. 3d 109, 128 (D. Mass. 2025) ("A pretermination hearing 'need not be elaborate.' Indeed, 'something less' than a full evidentiary hearing would be considered sufficient due process." (quoting *Loudermill*, 470 U.S. at 545)). Ms. Leonforte chose to resign rather than face the school board or pursue that administrative process, so she cannot now claim she was deprived of due process—the protections were made available to her and she declined to use them. *See Dusanek*, 677 F.2d at 543 (holding an agency cannot be accused of withholding procedural protections that existed and remained available to the plaintiff).

The Court **GRANTS** RSU 19 and Mr. Hammer's motion to dismiss Count II.

**C. Fourteenth Amendment Equal Protection Claim (Count IV)**

Count IV of the FAC asserts that Defendants violated the Equal Protection Clause of the Fourteenth Amendment by subjecting Ms. Leonforte to "adverse and disparate treatment"[6] because of her "perceived status as an outsider within the local community," notwithstanding her "compliance with Defendants' directives" following the April 11, 2025 student altercation. FAC ¶ 45. RSU 19 and Mr. Hammer argue her equal protection claim fails for two reasons: it is conclusory because it identifies no similarly situated employees who were treated differently, and because public employees cannot recover under a class-of-one theory. *See* ECF No. 29 at 6–7.

---

[6] The Equal Protection Clause prohibits only intentional discrimination, not disparate impact. *See Ricci v. DeStefano*, 557 U.S. 557, 627 (2009) (Ginsburg, J., dissenting).

To state an equal protection claim under § 1983, a plaintiff must show that she was selectively treated compared to others similarly situated, and that the selective treatment rested on impermissible considerations such as race, religion, intent to punish the exercise of constitutional rights, or malicious or bad-faith intent to injure. *See Freeman v. Town of Hudson*, 714 F.3d 29, 38 (1st Cir. 2013) (quoting *Rubinovitz v. Rogato*, 60 F.3d 906, 909–910 (1st Cir. 1995)).

As a threshold matter, Ms. Leonforte's "perceived status as an outsider," FAC ¶ 45, is not a protected class or another impermissible consideration. *See Lyng v. Castillo*, 477 U.S. 635, 638 (1986) (protected classes "exhibit obvious, immutable, or distinguishing characteristics that define them as a discrete group"). Because the FAC identifies no membership in a protected class, her claim can proceed, if at all, only on a "class-of-one basis." *Freeman*, 714 F.3d at 38. Such a claim requires "an extremely high degree of similarity" between the plaintiff and her chosen comparators. *Cordi-Allen v. Conlon*, 494 F.3d 245, 251 (1st Cir. 2007) (quotation modified). Here, the FAC identifies no similarly situated individuals, by name or by implication, and its allegations of selective treatment are therefore conclusory and insufficient to state a claim.

Ms. Leonforte's equal protection claim fails for an independent reason as well: the Supreme Court has held that the class-of-one theory of equal protection has no application to public employees. *Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 607 (2008). To survive, Plaintiff would instead have to allege membership in a protected class or that the challenged state action impinges on a fundamental right. *Manchester v. Town of Ludlow*, 780 F. Supp. 3d 296, 311 (D. Mass. 2025). As already explained above, Ms. Leonforte has done neither. *See Signs for Jesus v. Town of Pembroke*, 977 F.3d 93, 113–

14 (1st Cir. 2020) (rejecting an equal protection claim based on purported classifications affecting fundamental rights due to failure to identify any similarly situated comparators).

Accordingly, the Court **GRANTS** RSU 19 and Mr. Hammer's motion to dismiss Count IV.

### D. Free-Floating Americans with Disabilities Act Claim

Although not enumerated as a specific count, the FAC's prayer for relief asks this Court to declare that Defendants' acts and omissions violated Ms. Leonforte's rights under the Americans with Disabilities Act. FAC ¶ 50. Because the parties' briefing addresses the claim, the Court does as well.

Congress enacted the Americans with Disabilities Act ("ADA") to ensure individuals with physical or mental disabilities have a legal recourse against discrimination in critical areas, such as employment, recognizing a disability "in no way diminish[es] a person's right to fully participate in all aspects of society." 42 U.S.C. § 12101(a). Title I of the ADA bars a covered entity from discriminating against a qualified individual on the basis of disability in hiring, advancement, discharge, compensation, training, and other terms and conditions of employment. *Id.* § 12112(a). As a threshold matter, the First Circuit has held that Title I of the ADA does not authorize suits against defendants in their individual capacities. *See Román-Oliveras v. P.R. Elec. Power Auth.*, 655 F.3d 43, 52 (1st Cir. 2011). The Court's analysis therefore reaches only a potential claim against RSU 19 as Plaintiff's employer.

To successfully plead an ADA claim, a plaintiff must allege that she is "disabled within the meaning of the ADA." *Colón-Fontánez v. Mun. of San Juan*, 660 F.3d 17, 32 (1st Cir. 2011). The ADA defines "disability" as a physical or mental impairment that substantially limits one or more major life activities, a record of such an impairment, or

being regarded as having such an impairment. *See* 42 U.S.C. § 12102(1). Other than citing the ADA and describing general symptoms of severe anxiety and emotional distress, the FAC fails to identify what disability Ms. Leonforte claims, let alone allege facts fitting the statutory definition. Even treating her anxiety as a disability, the FAC inverts the causation the ADA requires: the statute prohibits discriminating against a qualified individual with a disability because of that disability. *See* 42 U.S.C. § 12112(a). Ms. Leonforte instead asserts that Defendants' actions caused her emotional and psychological harm, rather than alleging that her disability caused Defendants' discriminatory conduct toward her. ECF No. 33 at 9–10 .

The Court therefore concludes Ms. Leonforte has failed to state a claim under the ADA against RSU 19 and **GRANTS** the motion to dismiss this free-standing claim.

### III. Motion to Amend Complaint

In her response in opposition to Ms. Nadeau's motion to dismiss, Ms. Leonforte alternatively moves to amend the complaint for the second time to add additional factual allegations regarding Ms. Nadeau's role. *See* ECF No. 32 at 4–5. Defendants urge the Court to reject the request because Ms. Leonforte did not attach a proposed second amended complaint to her motion to amend. *See* ECF No. 34 at 4–5.

Generally, a court weighs a request for leave to amend based on futility: whether the proposed complaint, as amended, would still fail to state a claim upon which relief could be granted. *See Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). Here, Ms. Leonforte submitted no proposed second amended complaint and identified no facts that would shore up her claims against Ms. Nadeau. The Court therefore cannot assess, on the present record, whether an amendment would be futile.

The Court has nevertheless considered Ms. Leonforte's pro se status and Federal Rule of Civil Procedure 15's instruction that courts should freely give leave to amend when justice so requires. *See* Fed. R. Civ. P. 15(a)(2). Because her request was limited to Ms. Nadeau's role, the Court affords her the opportunity to renew her request, as to Ms. Nadeau only, with a proposed second amended complaint attached that appropriately honors that leniency without reaching issues she has not previously raised. The failure of any proposed amended complaint to state a plausible claim will likely result in dismissal of this action.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Regional School Unit 19 and Defendant Michael Hammer motions to dismiss. ECF No. 29. The Court **GRANTS** Defendant Nadeau's Motion to Dismiss, ECF No. 27, **with leave for Plaintiff to file a new motion for leave to amend the complaint**. Should Plaintiff seek to file a new motion for leave to amend, she must file within 21 days of this Order a new motion for leave accompanied by a proposed amended complaint.

**SO ORDERED.**

Dated this 25th day of September, 2026.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**